THE STATE OF DELAWARE, upon the relation of Pierre S. duPont, v. THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware, and JOSEPH S. WILSON, being the Mayor of The Mayor and Council of Wilmington, JAMES A. LEFEVRE, FRED BROWN, LEO J. DUGAN, PAUL E. MOORE, GERALD J. FARRELL, FRANK J. CORSANO, EDWARD R. BELL, HARVEY Y. WOOD, J. ERNEST BARKLEY, ROBERT L. ARMSTRONG, MARTIN J. WALSH, FRANK J. O'BARA and ALBERT T. STRAWBRIDGE, being members of and comprising the Council of The Mayor and Council of Wilmington.

*(June 26, 1947.)*

SPEAKMAN and PEARSON, J. J., sitting.

*William H. Foulk* and *Herbert L. Cobin* for the relator.

*David F. Anderson,* City Solicitor (of Wilmington), for respondents.

Superior Court for New Castle County, No. 188, May Term, 1947.

PEARSON, J., delivering the opinion of the court:

The substantive question is whether the Board of Public Education in Wilmington (called Board) or the Council of the Mayor and Council of Wilmington (called Council) is authorized to determine the amount of money, not exceeding a prescribed maximum, to be raised annually by school taxes for the use of the public schools of Wilmington.

The following is a statement of relevant allegations of the petition: Relator is a citizen and taxpayer of Wilmington. The respondent the Mayor and Council of Wilmington is a municipal corporation of Delaware. The individual respondents are residents of Wilmington and are the Mayor and members of the Council of the corporate respondent. The Board is a public corporation created by the Legislature of the State of Delaware which is charged with the supervision and government of the public schools in the City of Wilmington. The Board is empowered to fix the qualifications and salaries of superintendents, principals, teachers and employees. To insure the efficient operation of the public school system during the fiscal year commencing July 1, 1947 and ending June 30, 1948, the Board submitted to the Council on April 8, 1947, an estimate of its necessary expenses in the amount of $649,472.47 which, after deducting $15,000 covered by the sinking fund, left a balance of $634,472.47 to be derived from school taxes. Subsequently, on April 25, the Board submitted a supplemental estimate in the amount of $140,000, being the amount necessary to place in effect a new salary schedule for classroom teachers. The total estimate of $774,472.47 exceeded the tax levied for school purposes for the previous year by $468,968.47, of which increase approximately $282,400 is necessary to effect

an adjustment in teachers' salaries, in the employment of additional teachers to meet the increased enrollment in elementary schools, and in special education classes. The remainder of the increased amount is necessary to provide for the increase in cost of instructional supplies, materials, text books, janitor supplies, maintenance and operational costs. The Board submitted its estimate after a thorough and exhaustive study of the funds necessary to permit it properly and efficiently to perform the duties and obligations imposed on it. Without the appropriation by Council of the amount of the estimate, the Board will be unable to employ sufficient competent teachers and to secure other services and adequate supplies for the performance of its duties. Relator charges that Council is required to appropriate the amount determined to be necessary by the Board for these purposes, and to raise funds by the levy and collection of a school tax upon the taxable property in Wilmington to the extent that the tax, excluding the amount necessary for bonded debt and retirement of bonds falling due, shall not exceed seven mills on each dollar of the taxable property. Council proposes to appropriate to the Board $394,000 less than the amount estimated by the Board. The school system cannot be properly and efficiently operated with the amount proposed by Council, and the Board will be unable to perform its obligations and duties unless funds are provided in approximately the amount estimated by the Board. The proper and efficient operation of the public school system is necessary for the general welfare of Wilmington and its citizens, and the absence of such a system would be detrimental to relator and other property owners and residents of this city. The relator prays that a peremptory writ of mandamus issue to the respondents commanding them to appropriate to the Board the amount of its estimate, and to levy and collect a tax for school purposes upon the taxable property in Wilmington

in such amount as may be required to provide funds for this appropriation.

Respondents have moved to dismiss the petition on numerous grounds which may be summarized thus: (1) under the pertinent statutes, the Council, not the Board, is empowered to determine the amount of the annual appropriations for the public schools, which are derived from school taxes on Wilmington property; (2) the petition joins two distinct and separate matters; (3) the petition fails to show a clear and specific legal right to relief; (4) there are other adequate remedies to establish the rights asserted by the relator; (5) the question raised has become moot and a writ of mandamus should not be issued when it would prove nugatory.

Taking up the first ground, Section 2 of the Wilmington Public School Statutes[1] provides that the Board "shall have general and supervising control, government and management of all the public schools and all public school property of the city"; and confers broad powers of supervision and management on the Board, including the power to appoint officers, agents and employees as it may deem necessary; to fix their compensation; to fix qualifications of superintendents, principals and teachers; to fix their salaries; to purchase, exchange or repair school apparatus and furniture; to furnish text books and school supplies; to procure fuel; to pay salaries and wages; to establish kindergartens, play grounds, elementary schools and other schools or classes which it may deem necessary or wise, whether for minors or adults. The subject of the determination of annual

---

[1] By "School Statutes", we refer to a group of Acts consisting of "An Act to provide for the organization and control of the Public Schools of the City of Wilmington." 23 *Laws of Del.* 1905, *Chap.* 92, p. 140, and to the amendments of this Act. The School Statutes now effective appear in *Rev. Code of Wilmington, Del.* 1942. p. 368 *et seq.*, but there the numbering of the sections differs from the numbering in the various volumes of the Laws of Delaware.

amounts to be collected by school taxes for use of the schools is dealt with in the two following sections of the *School Statutes*, 35 *Laws of Del.* 1927, *Chap.* 87, pp. 263, 264; *Rev. Code of Wil. Del. Secs.* 487, 491:

"Section 9.  *  *  *

"The Board shall, during the month of April in each year, cause to be prepared and laid before them estimates of their probable revenue and expenses for the ensuing fiscal year, which estimates they shall lay before The Council on or before the first stated meeting of Council in May following. At the time of presenting to Council said estimates of revenue and expenses, the Board shall in addition thereto include the amount necessary to be paid for interest on bonds in the following fiscal year, and also, when necessary, the amount required in that year for the retirement of bonds. The said Board, early in June in each year, after The Council shall have made appropriation for the use of the public schools for the following fiscal year as herein provided, shall make the apportionment and appropriations for their expenditures for that year, based as nearly as may be, upon the estimates made by them in April previous, and such apportionment and appropriations shall be specified and arranged under the heads or items designated in said estimates. The said Board shall have no power or authority except when specially authorized by act of the General Assembly to borrow money or contract or create any debt or liability except ordinary debts and liabilities incurred in executing the duties imposed on them by law, to be paid out of the said appropriation made by Council and the receipts of the year for the time then current. No money shall be paid from the treasury of the Board unless the same shall have been appropriated as aforesaid."

"Section 11. The Council shall, every year, when determining the amount necessary to be raised on the persons

and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided that the amount to be raised by taxation for school expenses in any one year, including all the expenses which the Board of Education is authorized to incur under the provisions of this Act for the maintenance and operation of said schools, but not including interest on bonded debt and retirement of bonds falling due, shall not exceed seven mills on each one dollar of the value of real and personal property as assessed and taxable for City purposes. The amount collected for school purposes shall be paid into the city treasury as other taxes are paid."

Considering these sections in conjunction with the powers granted and duties imposed by Section 2, it seems to us that they should be construed as purporting to confer upon the Board the power to fix the amount to be appropriated by Council for use of the schools, and collected by way of school taxes. The Board is directed to submit estimates to Council of probable revenue and expenses. The direction that the Board make apportionment and appropriations based as nearly as may be upon "the estimates made by them" rather indicates that Council's appropriation should conform to the estimates than that Council is authorized to decide for itself the amount it should appropriate. The direction to Council "when determining the amount necessary to be raised" by taxation for public use to include the sum necessary to be raised by taxation "for executing the foregoing provisions" seems most reasonably to mean that Council must include the sum necessary to provide for the estimates of expenditures which the Board is authorized to make, under preceding sections of the School Statutes. The language (in Section 11) "provided that the amount to be raised by taxation for school expenses in any one year, including all the expenses which the Board of Education is

authorized to incur under the provisions of this Act for the. maintenance and operation of said schools * * *" emphasizes the power of the Board to incur certain expenses, and indicates that the amount to be raised by school taxes is determined in part by the amount of such expenses as the Board is authorized to incur.

Respondents urge, however, that by a section of the *City Charter*, 24 *Laws of Del*. 1907, *Chap*. 177, *Sec*. 15, p. 351; *Rev. Code of Wil. Del. Sec*. 43, p. 65, this power is reposed in Council. The section reads in part as follows: "The Council shall have the power and it shall be its duty, on or before the first day of June in each and every year, to appropriate to and for the Departments hereinafter named, sums of money to whatever amounts the Council may deem proper, provided that the minimum amount for the Departments respectively shall not be less than the following: * * * [then follows a list of 'Departments' and minimum amounts of appropriations, including] Board of Public Education in Wilmington, One hundred and eighty thousand dollars per annum; * * *."

In passing, it may be observed that this is the only statute to which our attention has been called, in which the Board is referred to as a "Department" of the City. Also, in other provisions of the City Charter (effective when the last quoted act was adopted, and now) the subject of moneys necessary to be raised for the use of the City is treated as a category separate and distinct from the subject of moneys necessary to be raised for the use of the schools. Compare: 17 *Laws of Del. Chap*. 207, *Sec*. 84, p. 460; 28 *Laws of Del. Chap*. 121, *Sec*. 17, p. 363. But more important, it should be pointed out that when the 1907 Act was adopted, it represented a definite change in the pre-existing law insofar as it purported to empower Council to appropriate to the Board sums "to whatever amounts the Council may deem proper."

There is no doubt whatever that under the School Statutes adopted in 1905, 23 *Laws of Del. Chap.* 92, *Sec.* 11, p. 154, the Board was empowered to fix the amounts to be appropriated to it. Sections 2, 9 and 11 of the 1905 Act were, in many respects, similar to the present sections, and contain many of the expressions which we have commented on as indicating a power in the Board to determine amounts to be appropriated for school expenses. In addition, Section 11 of the 1905 Act provided that "At the time of making the annual appropriations for public use, the Council shall also make an appropriation for current school expenses equal in amount to that annually computed and laid before said Council" by the Board. The 1907 amendment of the City Charter was not accompanied by an amendment purporting to repeal or modify the provisions of the 1905 School Statutes which confer the power upon the Board to fix the amounts of appropriations. Nevertheless, the 1907 Act was later in point of time; it contains a provision repealing inconsistent acts; and since it purported to repose the power in Council in terms which we think clear, it will be assumed to have effected an amendment of the School Statutes with respect to the body authorized to exercise the power.

In 1915, Section 11 of the School Statutes was amended to read as follows, 28 *Laws of Del. Chap.* 167, p. 530: "The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided, that the amount to be raised for current school expenses as aforesaid in any one year shall be exclusive of the amount designated for the erection or extension of school houses and for furniture and heating apparatus for the same. The amount collected for school purposes shall be paid into the city treasury as other taxes are paid. At the time of making the annual appropriation

for public use, the Council shall also make an appropriation for current school expenses equal in amount to the amount annually computed and agreed upon by the said Council and the 'Board of Public Education in Wilmington'; provided that the sums so computed and appropriated shall be exclusive of the amount designated for the erection or extension of school houses and for furniture and heating apparatus for the same.  *  *  *"

The express provision of this Act, that the appropriation by Council should be "equal in amount to the amount annually computed and agreed upon" by Council and the Board, has the effect of repealing the 1907 Act insofar as it conferred the power upon Council alone to fix the amounts of appropriations.

Section 11 was again amended and it appears in 32 *Laws of Del.* 1921 *Chap.* 163, § 10, p. 547 as follows: "The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided, that the amount to be raised by taxation for school expenses in any one year including all the expenses which the Board of Education is authorized to incur under the provisions of this Act, and including expenses for maintenance, operation, interest on bonded debt, and retirement of bonds falling due, shall not exceed seven mills on each one dollar of the value of real and personal property as assessed and taxable for city purposes.  The amount collected for school purposes shall be paid into the city treasury as other taxes are paid.  At the time of making the annual appropriation for public use, the Council shall also make an appropriation for school expenses equal in amount to the estimate of revenues and expenses laid before said Council under the provisions of Section 7 of this Act,

being Section 9 of the Act as amended, provided, that the sums so appropriated shall not exceed seven mills on each one dollar of the assessed value of city property as assessed and taxable for city purposes."

Under this amendment, the provision of the 1915 Act for an appropriation in "the amount annually computed and agreed upon by" Council and the Board was omitted; and instead it was provided that Council should make an appropriation "equal in amount to the estimate of revenues and expenses" laid before Council by the Board. Thus, the power to fix the amount of appropriations was again reposed in the Board, alone, where it had been prior to the 1907 Act.

In 1927, Sections 9 and 11 of the School Statutes were amended as they now appear and are quoted above in this opinion. Section 11, under the 1921 Act, contains three sentences. The 1927 Act changes the language of the first sentence by excluding the amount of interest on bonded debt and retirement of bonds in determining the maximum to be collected under the "seven mill" rate for school taxes; and omits the third sentence altogether. Respondents rely heavily on this omission in support of their position that Council is empowered to determine the amount of appropriations. We think that the mere omission of this sentence is not enough, in view of what is left in Sections 9 and 11, to change the pre-existing law in the respect contended for by respondents. Earlier in this opinion we discussed Sections 9 and 11 (together with Section 2) as they now appear. It is unnecessary to repeat the reasons which show that the language of these sections warrants the construction that they confer upon the Board the power to fix the amount of appropriations to the Board. Immediately prior to the adoption of Sections 9 and 11 in 1927, that power was reposed in the Board by the statutes then effective. The sec-

tions as amended in 1927 contain no language suggesting that the power to fix the amount of appropriations should be taken from the Board, or conferred upon Council. To infer such an important change in the law from the omission of the third sentence of Section 11, 1921 Act, is in our judgment less reasonable than to adopt the construction of the present sections which their actual language justifies. We therefore conclude that the power to fix the amount of appropriations (within the maximum limitation) remains now in the Board, and the correlative duty to make appropriations accordingly is imposed on Council.

██ Respondents further contend that the petition should be dismissed because it joins two distinct and separate matters. By this, they refer to allegations of the petition that the Council has not in previous years appropriated all of the funds levied and collected for school purposes, but has diverted part of them for purposes other than schools. No relief is prayed for on the basis of these allegations, and we think that they do not constitute an infirmity which would require a dismissal of the petition.

Next, respondents urge that the petition shows no clear and specific legal right. In view of our construction of the statutes, this ground is obviously without merit.

██ ██ Respondents also contend that there are other adequate remedies available to relator and that a writ of mandamus should be denied. One of the remedies suggested by respondents is that the Board may raise additional sums by levying school taxes pursuant to the provisions of 32 *Laws of Del. Chap.* 160. We fail to see how action by the Board under this statute, assuming it is qualified so to act, would in any sense enforce the duties of Council sought to be enforced by this proceeding; or how this relator could require the Board to act under the additional tax statute. Respondents also suggest a proceeding under the declaratory

judgment statute. The relief afforded by a declaratory judgment is so different from that afforded by mandamus that we think this suggestion may be dismissed without discussion.

Lastly, respondents contend that the questions raised in this case have become moot because Council is under a mandatory duty to make appropriations on or before June first in each year; and since that date is now past, the court cannot direct the making of an appropriation with respect to the year involved in this case. The statutes contemplate that assessments for school purposes shall be made before the first of June, 28 *Laws of Del. Chap.* 121, *Sec.* 16, p. 362; *Rev. Code of Wil. Del., Sec.* 82, and that the Council shall have the power and shall be under a duty to make appropriations on or before the first day of June, 24 *Laws of Del. Chap.* 177, *Sec.* 15, p. 351; *Rev. Code of Wil. Del. Sec.* 43. But we find no provision forbidding the making of assessments or of appropriations after the first and during the month of June. Unless they could be made, it would be practically impossible to require Council to perform its duty in instances where it failed in this regard. There is no legal limitation on the power of this court to order Council to perform its duty to make a required appropriation and to assess a tax for school purposes during the month of June, where, as here, the omission to do so prior to June first was the fault of Council.

Our conclusion is that respondents' motion that the rule be discharged and the petition dismissed should be denied.

An order accordingly will be entered.